**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LU ANNE MILLER,

                Plaintiff,

vs.                                                    Case No. 3:13-cv-391-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Lu Anne Miller ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff alleges disability based on "complications from monoclonal gammopathy, fatigue, high blood pressure, [and] sarc[oi]dosis." Transcript of Administrative Proceedings (Doc. No. 7; "Tr." or "administrative transcript"), filed July 16, 2013, at 73. On August 4, 2005, Plaintiff filed an application for DIB. Tr. at 121-23. Plaintiff alleged an onset disability date of June 8, 2005. Tr. at 121. Plaintiff's application was denied initially, see Tr. at 60-62, and was denied upon reconsideration, see Tr. at 70-71.

On April 29, 2008, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 26-51. The ALJ subsequently issued a decision finding Plaintiff not disabled from her alleged

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 9), filed August 6, 2013; Reference Order (Doc. No. 10), signed August 7, 2013 and entered August 8, 2013.

disability onset date, June 1, 2005, through the date of the decision, May 30, 2008. Tr at 19-25, 635-41 (duplicate). The Appeals Council denied Plaintiff's request for review, Tr. at 1-4, 642-45 (duplicate), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed that final decision to this Court. See Compl. (Doc. No. 1), No. 3:10-cv-497-J-TEM (M.D. Fla. June 9, 2010). The Honorable Thomas E. Morris, United States Magistrate Judge, signed an Order and Opinion on September 27, 2011, reversing the Commissioner's final decision and remanding the case with instructions. See Tr. at 646-59; see also Order and Opinion (Doc. No. 18), No. 3:10-cv-497-J-TEM (M.D. Fla. entered Sept. 28, 2011).

Consistent with Judge Morris's Order, on December 30, 2011, the Appeals Council entered an order remanding Plaintiff's claim to the ALJ for further proceedings. Tr. at 715. The Appeals Council's order indicated Plaintiff had subsequently filed a claim for benefits on July 16, 2008, and the Social Security Administration determined Plaintiff became disabled on June 1, 2008. Tr. at 715. The time period at issue in this appeal then is June 1, 2005 through May 31, 2008 ("the relevant time period").

As directed by Judge Morris and the Appeals Council, the same ALJ who issued the initial decision on Plaintiff's claim held another hearing on June 12, 2012, during which Plaintiff, who was represented by counsel, a VE, and a medical expert, Javier Barquet, M.D. ("Dr. Barquet") testified. Tr. at 584-631; see Tr. at 762-64 (curriculum vitae of Dr. Barquet). At the time of the hearing, Plaintiff was forty-five (45) years old. Tr. at 589. The ALJ issued a Decision on July 5, 2012, finding Plaintiff not disabled "from June 1, 2005, the alleged onset date, through May 31, 2008, the day prior to her established onset date on her

subsequent application for benefits." Tr. at 562 (emphasis and citation omitted). On March 5, 2013, the Appeals Council "found no reason under [the Social Security Administration's] rules to assume jurisdiction." Tr. at 540. Therefore, the ALJ's Decision dated July 5, 2012 became the final decision of the Commissioner. On April 15, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: 1) whether the ALJ erred in evaluating the medical opinion of Plaintiff's treating physician, Robert James, M.D. ("Dr. James"); and 2) whether the ALJ erred in his consideration of the medical opinion of Ciceron V. Lazo, M.D. ("Dr. Lazo"), an examining physician. See Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 12; "Pl.'s Mem."), filed September 16, 2013, at 1, 11-21. On January 15, 2014, Defendant filed a memorandum responding to Plaintiff's arguments and asserting that the Commissioner's final decision is supported by substantial evidence. See Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained below.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 547-62. At step one, the ALJ observed that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2005, through May 31, 2008, the day prior to her established onset date on her subsequent application for benefits." Tr. at 549 (emphasis and citation omitted). At step two, the ALJ found that "[f]rom June 1, 2005, through May 31, 2008, [Plaintiff] had the following severe impairments: sarcoidosis, monoclonal gammopathy of unknown significance, degenerative joint disease, diabetes mellitus, myofascial left shoulder pain, fibromyalgia, and bilateral foot impairments." Tr. at 550 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 550 (emphasis and citation omitted). The ALJ determined that during the relevant time period, Plaintiff had the residual functional capacity ("RFC") as follows:

> [Plaintiff could] perform light work as defined in 20 CFR [§] 404.1567(b) except she needed a sit/stand option; needed to avoid ladders or unprotected heights; needed to avoid proximity to heavy, moving machinery; needed to avoid concentrated dust, fumes, or gases; needed a low stress environment and

> needed to avoid a production line; could only occasionally bend, crouch, kneel, or stoop; needed to avoid squatting or crawling; and needed to avoid the push/pull of arm controls and the operation of foot controls.

Tr. at 550 (emphasis omitted).

At step four, the ALJ found that during the relevant time period, Plaintiff "was capable of performing past relevant work as a Telephone Answering Service Operator." Tr. at 560 (emphasis omitted). Although the inquiry could have ended at step four, the ALJ proceeded to step five and made the following alternative finding. After considering Plaintiff's "age, education, work experience, and [RFC]," the ALJ found that "there were other jobs that existed in significant numbers in the national economy that [Plaintiff] also could have performed" during the relevant time period. Tr. at 561 (citations omitted). Relying on the testimony of the VE, the ALJ determined Plaintiff could have performed representative jobs such as "Office Helper"; "Ticket Seller"; and "Addresser." Tr. at 561. The ALJ concluded that Plaintiff "was not under a disability . . . from June 1, 2005, the alleged onset date, through May 31, 2008, the day prior to her established onset date on her subsequent application for benefits." Tr. at 562 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises two issues on appeal, both of which deal with the ALJ's treatment of medical opinions. Therefore, the issues are discussed together.

On November 29, 2007, Dr. James completed a Physical RFC Questionnaire. Tr. at 240-43. Dr. James indicated that he initially saw Plaintiff in January 1988, and thereafter he saw Plaintiff about three to four times per year. Tr. at 240. His diagnoses of Plaintiff included Type 2 diabetes mellitus, hypertension, monoclonal gammopathy, sarcoidosis, and fibromyalgia syndrome. Tr. at 240. Plaintiff's symptoms included "diffuse pain, persistent fatigue, poor sleep, [and] mental confusion." Tr. at 240 (capitalization omitted). As to the clinical findings and objective signs supporting those diagnoses and symptoms, Dr. James

stated, "[Plaintiff] has multiple tender points in locations . . . ."[3] Tr. at 240. Dr. James found that Plaintiff is not a malingerer and her depression affects her symptoms and functional limitations. Tr. at 241. He opined Plaintiff is capable of low stress jobs, she can sit and stand for 15 minutes each at one time, and she can sit for about 2 hours in an eight-hour workday and stand/walk less than 2 hours in an eight-hour workday. Tr. at 241-42. He further indicated that Plaintiff's impairments will produce good and bad days, and she will miss about four days of work per month. Tr. at 243. He concluded that Plaintiff's symptoms and limitations began in about December 2004. Tr. at 243. Accepting all of Dr. James's limitations would preclude Plaintiff from all work.

On February 4, 2008, Dr. Lazo performed a one-time examination of Plaintiff, see Tr. at 520-22, and he also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), see Tr. at 523-28. Dr. Lazo opined that Plaintiff could sit for two hours in an eight-hour workday, and she could stand and walk each for thirty minutes in an eight-hour workday. Tr. at 524. Dr. Lazo repeatedly noted on the form that Plaintiff suffered constant and/or severe pain in her shoulders, elbows, wrists, and both feet. Tr. at 524-28. He opined that the limitations he identified lasted or could be expected to last for twelve consecutive months. Tr. at 528.

---

[3] The rest of Dr. James's sentence is illegible, see Tr. at 240, although the ALJ interpreted it as "consistent with fibromyalgia," Tr. at 555.

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians['[5] opinions] are given more weight than [nontreating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician, the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[5] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-8-

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same

time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham, 660 F.2d at 1084.

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

Here, the ALJ thoroughly summarized the medical evidence and opinions in the administrative transcript, including Dr. James's and Dr. Lazo's medical opinions. See Tr. at 551-59. The ALJ then assigned "little weight" to Dr. James's and Dr. Lazo's opinions. Tr. at 559. "The [ALJ] credit[ed] the medical expert opinion of Dr. Barquet that the opinions of

Dr. James and Dr. Lazo are not supported [by] the record." Tr. at 559. The ALJ reasoned as follows:

> Although [Plaintiff's] family practitioner, Dr. James, and the consultative examiner, Dr. Lazo, opined that [Plaintiff] had significant functional limitations, none of her treating specialists assigned her any functional limitations. In fact, both her pulmonologist, Dr. Johnson, and her rheumatologist, Dr. Lee, advised her to engage in a regular exercise program.

Tr. at 559 (citations omitted).

The ALJ's detailed discussion of the medical evidence supports his assignment of weight to the medical opinions in the record. In addition to relying on Dr. Barquet's opinion to determine that "little weight" should be afforded to Dr. James's and Dr. Lazo's opinions, the ALJ also based his assignment of weight on the medical opinions themselves in conjunction with a review of the evidence on the whole, including Plaintiff's testimony. Plaintiff does not challenge the ALJ's Decision with respect to Plaintiff's credibility nor does she challenge the assignment of weight to the opinions in the record, other than to the opinions of Dr. James and Dr. Lazo and as a result, Dr. Barquet's opinion. Considering the evidence on the whole, the ALJ properly assigned "little weight" to the opinions of Drs. James and Lazo.

Contrary to Plaintiff's argument, see Pl.'s Mem. at 17-18, 20, the ALJ did not rely on the treating specialists' silence as inferring that Plaintiff has no functional limitations. Rather, the ALJ reviewed their notes and treatment plans, and the ALJ specifically pointed to their recommendations that Plaintiff "engage in a regular exercise program," Tr. at 559 (referring to Tr. at 476, 534), and their minimal physical findings, see Tr. at 558 (discussing treating specialists' treatment notes), as reflecting that Plaintiff was not limited any further than the

-11-

ALJ's RFC assessment.  Additionally, in her Memorandum, Plaintiff states it is notable that she "filed a subsequent application for benefits while her original claim was pending and was found disabled with an onset date of disability of June 1, 2008."  Pl.'s Mem. at 3.  The fact that Plaintiff was subsequently awarded benefits for the day after the period at issue here is of no moment.  See Solomon v. Colvin, No. 2:12-cv-875-TFM, 2014 WL 1152833, at *13 (M.D. Ala. Mar. 21, 2014) (unpublished) (noting that "a different result on a subsequent application for disability is not material to the previous finding even where the subsequent application determined that the claimant was disabled beginning the day after the ALJ's non-disabled determination" (quotations and citation omitted)); see Stokes v. Astrue, No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at *2 (M.D. Fla. July 23, 2009) (summarizing various approaches of the effect of a subsequent disability determination on a prior application and finding that "it is clear the mere fact of an award of benefits recognizing disability beginning one date does not compel a certain result for the preceding period").

While recognizing that it "may not constitute error that automatically supports a reversal of [the ALJ's] decision," Pl.'s Mem. at 22, Plaintiff also argues that the ALJ should be bound by or at least be required to explain the discrepancy between the RFC assessment in the ALJ's decision dated May 30, 2008–the decision that was vacated by the Appeals Council after remand from this Court–and the Decision subject of this appeal, see id. at 21-22.  The ALJ's May 30, 2008 decision was deficient in its discussion of the medical opinions and was vacated on remand.  The vacated May 30, 2008 decision carries no weight.  See United States v. Sigma Int'l, Inc., 300 F.3d 1278, 1280 (11th Cir. 2002) (recognizing that vacated decisions "are officially gone. They have no legal effect what[so]ever. They are void.

None of the statements made in [vacated decisions] ha[ve] any remaining force"); see also Gibbs v. Barnhart, 130 F. App'x 426, 430 (11th Cir. 2005) (finding a plaintiff's argument that a subsequent ALJ was bound by a prior ALJ's findings when the first ALJ's findings had been vacated to be "without merit"). As long as the Decision being reviewed on this appeal is supported by substantial evidence, which the undersigned has found that it is, the discrepancies between the two decisions are not relevant.

Upon review of the entirety of the ALJ's Decision, the undersigned finds that the ALJ did not err in assigning "little weight" to the opinions of Dr. James and Dr. Lazo. The ALJ's Decision is supported by substantial evidence.

## V. Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 25, 2014.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record